UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

BERNARD BRANCH,

                         Plaintiff,                    Case No. 1:25-cv-337

v.                                                     Hon. Hala Y. Jarbou

CORY GRAHN et al.,

                         Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a prior

order, the Court granted Plaintiff leave to proceed *in forma pauperis* (ECF No. 18). Under the

Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is

required to dismiss any prisoner action brought under federal law if the complaint is frivolous,

malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a

defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The

Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520

(1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly

incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will

dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC)

at the Saginaw Correctional Facility (SRF) in Freeland, Saginaw County, Michigan. The events

about which he complains, however, occurred at the Michigan Reformatory (RMI) in Ionia, Ionia County, Michigan. Plaintiff sues the following RMI staff: Nurse Practitioner Cory Grahn; Medical Doctor Suzanne Howard; Food Service Director Kent Wakefield; Food Service Supervisors Unknown Clark, Holly Zellar, Eric Smith, Unknown Waters, and Unknown Parsons; Unknown Lay; Unknown Maybee; Unknown Merryle; Officer Unknown Nixon a/k/a Big Nick; Richard D. Russell; Classification employee Unknown Houck; Inspector Unknown Bonn; and Health Unit Manager B. Deeren.

In Plaintiff's amended complaint, he alleges that on November 2, 2018, he was assigned to a job in food service. (ECF No. 13, PageID.96.) Plaintiff states that Defendant Maybee was one of his supervisors and that she began criticizing his work in an exaggerated manner, which resulted in unjustified lay ins without pay on three separate occasions. (*Id.*) Plaintiff complained about Defendant Maybee to Defendant Wakefield. (*Id.*) Plaintiff was subsequently moved to cook's helper, although Plaintiff was periodically pulled from his assignment to work on the service line by Defendant Maybee and other supervisors. (*Id.*)

Plaintiff states that Defendant Maybee continued to criticize him in an over-the-top manner, so he filed more complaints about her. (*Id.*, PageID.97.) Plaintiff was then assigned to the relief diet line cook. (*Id.*) Plaintiff states that Defendant Wakefield then asked him to become his snitch and to sign off on the grievances he had written against Defendant Maybee. Plaintiff refused. (*Id.*)

Plaintiff filed a grievance on Defendant Wakefield, as well as a PREA complaint. (*Id.*, PageID.98.) Plaintiff was terminated from food service shortly thereafter and believes that it was in retaliation for his grievances on Defendants Maybee and Wakefield. (*Id.*) Plaintiff also believes

that the statement of Defendant Clark contributed to his job termination and states that his termination was approved by Defendants Houck and Bonn. (*Id.*)

Plaintiff attaches a copy of a step I grievance response to his complaint, which is dated September 12, 2019. (ECF No. 13-1, PageID.142.). Respondent Assistant Deputy Warden J. Dunigan (not a Defendant) states:

> I spoke to Classification Director Houck and she stated that Inspector Bonn stated prisoner Branch had an active PREA complaint against Food Service Director Wakefield, and to please re-assign [him] to a position where he doesn't have direct contact with Mr. Wakefield. Classification Director Houck also stated she contacted FS [Food Service] Supervisor Clark and asked if there was a position that prisoner Branch could work in the food service area that didn't have direct contact with Mr. Wakefield. Mr. Clark stated no. A[t] this time, Houck instructed FS Clark to lay-in prisoner Branch per Inspector Bonn. On 5/28/2019 prisoner Branch was removed from his Food [S]ervice assignment due to a pending PREA Investigation, I am asking he pick 3 other jobs at this time so he can be reassigned. The findings of the PREA investigation were insufficient so prisoner Branch will return to his kitchen detail.

(*Id.*)

Plaintiff states that he was unemployed from food service for four to five months and that the PREA investigation was a fraud. (ECF No. 13, PageID.99.) During the time he was unemployed, he developed a hernia, but Defendant Grahn and Howard refused to recommend surgery. (*Id.*) Plaintiff states that Defendant Grahn only did cursory examinations and that Defendant Howard merely prescribed a jock strap. (*Id.*, PageID.100.) Defendant Howard also prescribed Colace and Tylenol and refused to prescribe Plaintiff adequate pain medication. (*Id.*)

After four or five months, Plaintiff was reassigned to work in the kitchen but was not given the diet cook assignment, which would have been accommodating for his hernia. (*Id.*, PageID.101–102.) Instead, Defendants Wakefield, Zellar, Maybee, Merryle, Lay, and Clark had Plaintiff assigned to the dining room, which was more physically demanding and required bending over, picking up trays, and cleaning tables. (*Id.*, PageID.102.) Plaintiff states that Defendants sometimes

left him alone on the job assignment, which was overwhelming to him physically, and he believes that this was done to retaliate against him. (*Id.*, PageID.102–103.) At one point, Defendant Lay saw that Plaintiff had completed cleaning his area and ordered him to clean another area despite knowing Plaintiff's medical condition. (*Id.*, PageID.103.) Plaintiff complains that no accommodation was made for his medical condition. (*Id.*, PageID.104.)

Plaintiff states that Defendant Wakefield abruptly dropped his pay rate down to a beginner level pay and when Plaintiff asked about it, Defendant Wakefield told Plaintiff to write a grievance. Plaintiff states that he did, but his pay rate remained at the beginner level until he was laid in after surgery on March 31, 2022. (*Id.*, PageID.103.)

In addition, Plaintiff makes a conclusory assertion that prior to his surgery[1] he had a 10-pound weight restriction but was nonetheless being denied accommodations in his job assignment, and that a white prisoner who also had a hernia and a 10-pound weight restriction was given light duty overtime opportunities. Plaintiff also states that Defendants Maybee and Merryle pulled Plaintiff from light duty assignments to work the service line in place of the white prisoner on two occasions. (*Id.*, PageID.101–102.)

Plaintiff also alleges that during a COVID-19 floor move, Defendant Nixon ignored Plaintiff's 10-pound weight restriction and ordered him to lift heavy footlockers. (*Id.*) Although Plaintiff does not specify the date on which this occurred in the body of his complaint, he attaches a copy of a grievance appeal form which indicates that Defendant Nixon ordered Plaintiff to lift heavy footlockers on April 15, 2021. (ECF No. 13-1, PageID.138.) The form indicates that Plaintiff's step II appeal was denied and the form was returned to Plaintiff on May 11, 2021. (*Id.*)

---

[1] Plaintiff alleges that the other prisoner, who was white, also had a hernia. Therefore, this situation clearly occurred prior to the surgical repair of Plaintiff's hernia.

Plaintiff asserts that he was treated worse than other prisoners because he is classified as homosexual. (ECF No. 13, PageID.106.)

Plaintiff states that Defendant Grahn finally recommended Plaintiff for surgery sometime in 2022. (*Id.*, PageID.100.) Plaintiff's hernia was surgically repaired on March 24, 2022, following which he was immediately discharged from the hospital. (*Id.*, PageID.101.) On March 31, 2022, following surgery, Defendants Smith and Wakefield allegedly conspired to terminate Plaintiff from his job assignment based on his 10-pound weight restriction. (*Id.*, PageID.105.)

Plaintiff asserts that he suffered from swelling in his feet and legs, for which he was prescribed medication and compression socks. Plaintiff states that "Defendants, Kitchen Supervisors" were deliberately indifferent to his swollen legs and feet when they ordered Plaintiff to stand on the service line far too often despite knowing that he should have been allowed to sit with his legs elevated. (*Id.*, PageID.108.) Plaintiff claims that this conduct was at least partially motivated by a desire to retaliate against him for his complaints and grievances. (*Id.*)

Plaintiff also states that "Doctors, both Defendants" took away his shoe detail and refused to reinstate it, saying that he did not fit the new criteria for the shoes. (*Id.*) Plaintiff states that these Defendants also "stripped Plaintiff of his arch supports, heat related illness mandate order, and extra mattress order," which violated the previous doctor's orders. (*Id.*)[2]

Plaintiff states that he handed his original complaint to prison officials for mailing on March 20, 2025, and attaches a copy of his expedited mail form dated on that same date as evidence of this assertion. (ECF No. 13-1, PageID.148.)

---

[2] Finally, Plaintiff states that at the time that he filed his complaint, unnamed medical staff at ICF were refusing to provide him with Colace and fiber pills and that his complaints resulted in appointments which cost $5.00. (*Id.*, PageID.109.) However, Plaintiff does not specify the identity of any individual nor does he state that any of the named Defendants were involved.

Plaintiff states that Defendants violated his rights under the First, Fifth, Eighth and Fourteenth Amendments and seeks compensatory and punitive damages. (ECF No. 13, PageID.112–120; ECF No. 14, PageID.159–161.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.   Statute of Limitations

Initially, the Court notes that the vast majority of Plaintiff's claims are barred by the statute of limitations. State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261, 268–69 (1985). For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Accrual of the claim for relief, however, is a question of federal law. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer*, 98 F.3d at 220.[3]

To the extent that Plaintiff provides dates of specific events, it appears that he is asserting claims related to conduct which occurred between November 2, 2018, and March 31, 2022. (ECF No. 13.) In addition, Plaintiff makes vague assertions of misconduct that may have occurred later;

---

[3] 28 U.S.C. § 1658 created a "catch-all" limitations period of four years for civil actions arising under federal statutes enacted after December 1, 1990. The Supreme Court's decision in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), which applied this federal four-year limitations period to a suit alleging racial discrimination under § 1981, does not apply to prisoner claims under 42 U.S.C. § 1983 because, while § 1983 was amended in 1996, prisoner civil rights actions under § 1983 were not "made possible" by the amended statute. *Id.* at 382.

however, the Court notes that RMI was closed on November 13, 2022.[4] Therefore, none of the misconduct allegedly engaged in by the named Defendants at RMI could have occurred after November 13, 2022. Plaintiff had reason to know of the "harms" done to him at the time they occurred. Hence, Plaintiff's claims accrued between November 2, 2018, and November 13, 2022.

As noted above, Plaintiff states that he handed his original complaint to prison officials for mailing on March 20, 2025. Michigan law no longer tolls the running of the statute of limitations when a plaintiff is incarcerated. *See* Mich. Comp. Laws § 600.5851(9). Further, it is well established that ignorance of the law does not warrant equitable tolling of a statute of limitations. *See Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991); *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991); *Mason v. Dep't of Justice*, No. 01-5701, 2002 WL 1334756, at *2 (6th Cir. June 17, 2002).

However, the Court notes that the statute of limitations is tolled for the period during which a plaintiff's available state administrative remedies were being exhausted. *See Brown v. Morgan*, 209 F.3d 595, 596-97 (6th Cir. 2000).

> The Prison Litigation Reform Act amended 42 U.S.C. § 1997e to provide: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (1999) . . . . This language unambiguously requires exhaustion as a mandatory threshold requirement in prison litigation. Prisoners are therefore prevented from bringing suit in federal court for the period of time required to exhaust "such administrative remedies as are available." For this reason, the statute of limitations which applied to Brown's civil rights action was tolled for the period during which his available state remedies were being exhausted.

---

[4]  *See*   https://www.michigan.gov/corrections/Prisons/Closed-Facilities/Michigan-Reformatory (last visited Sep. 22, 2025).

*Id.* at 596 (citing *Harris v. Hegmann*, 198 F.3d 153, 157-59 (5th Cir. 1999) (per curiam), and *Cooper v. Nielson*, 194 F.3d 1316, 1999 WL 719514 (9th Cir. 1999)). The Sixth Circuit noted that because it could not determine when the period of exhaustion expired, the appropriate remedy was to remand the case to the District Court to "consider and decide the period during which the statute of limitations was tolled and for such other proceedings as may be necessary." *Id*. at 597.

A claim barred by the statute of limitations is subject to dismissal for failure to state a claim. *See Jones v. Bock*, 549 U.S. 199, 215 (2007) ("If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim . . . ."); *see also Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017) (holding that if, on the face of a complaint, the allegations show that relief is barred by an affirmative defense (lack of exhaustion), the complaint is subject to dismissal for failure to state a claim) (citing *Jones*, 549 U.S. at 215); *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) (when a complaint on its face is barred by the statute of limitations, it fails to state a claim). Therefore, to the extent that Plaintiff's claims are barred by the statute of limitations—which, when applicable, is discussed below—they are properly dismissed for failure to state a claim.

### B.    Defendants Grahn, Howard, and Deeren

Plaintiff states that he was diagnosed as having an inguinal hernia on August 6, 2019, but did not receive surgery until March 24, 2022, after approximately two years and seven months during which Plaintiff claims that he was in pain. (ECF No. 13, PageID.112.)

According to a September 13, 2019, step I grievance response by Nurse Manager S. Rectenwal, RN (not a Defendant), which was reviewed by Defendant Deeren, Plaintiff was examined by the medical provider on September 12, 2019, and was treated for his hernia with scrotal support. (ECF No. 13-1, PageID.149.)

> The grievant was examined by the medical provider for loss of appetite. During the examination the medical provider observed a small, painless hernia and notified the grievant. The medical provider ordered labs and a chest x-ray for the grievant's medical concern. On 8/12/19 a healthcare request was received from the grievant stating that he was concerned about his hernia. An appointment was scheduled with healthcare at that time. The grievant had labs drawn on 8/13/19. On 8/13/19 and 8/28/19 the medical provider reviewed the grievant's medical record and ordered weekly vital signs. On 9/12/19 the medical provider examined the grievant's hernia and ordered a scrotal support for the grievant. The grievant was informed by the medical provider that his hernia did not meet the guidelines for surgical repair. The grievant was educated by the medical provider to use Tylenol for pain.

(*Id.*) The respondent concluded that the medical provider has the final authority in determining treatment within the facility. (*Id.*)

Plaintiff attaches another step I grievance response by S. Rectenwal RN dated June 24, 2020, addressing Plaintiff's complaint that his request to see a hernia specialist had been denied by Defendant Grahn. (*Id.*, PageID.150.) In the grievance response, Rectenwal noted that the medical provider had examined Plaintiff on June 8, 2020, and determined that referral to a hernia specialist was not indicated. (*Id.*)

Plaintiff also attaches a copy of a medical detail dated December 14, 2020, showing that he was on light duty with a 10-pound weight restriction and that he was to wear compression stockings. (ECF No. 13-1, PageID.135.) Plaintiff was also given an extra pillow, an athletic supporter, and a bedside basin. (*Id.*) This detail was renewed on January 7, 2022, with the addition of personal glasses. (*Id.*, PageID.140.)

In his amended complaint, Plaintiff alleges that Defendant Grahn finally recommended Plaintiff for surgery sometime in 2022. (ECF No. 13, PageID.100.) Plaintiff's hernia was surgically repaired on March 24, 2022, following which he was immediately discharged from the hospital. (*Id.*, PageID.101.)

Plaintiff also states that, at some point, "Doctors, both Defendants" took away his shoe detail and refused to reinstate it, saying that he did not fit the new criteria for the shoes. (*Id.*,

PageID.108.) Plaintiff states that these Defendants also "stripped Plaintiff of his arch supports, heat related illness mandate order, and extra mattress order," which violated the previous doctor's orders. (*Id.*)

### 1.    Eighth Amendment

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to

11

the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted), *abrogation on other grounds recognized by Lawler as next friend of Lawler v. Hardiman County*, 93 F.4th 919 (6th Cir. 2024).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison

official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

As noted above, absent tolling for the period during which a plaintiff's available state administrative remedies were being exhausted, Plaintiff's claims of misconduct which precede March 20, 2022, are barred by the statute of limitations. Therefore, the Court will not address the merits of those claims. This includes Plaintiff's claim that he was denied surgery for more than two years since he alleges that Defendant Grahn recommended him for surgery sometime in 2022, and states that his hernia was surgically repaired on March 24, 2022. (ECF No. 13, PageID.100–101.)[5]

Plaintiff asserts that following his surgery, medical Defendants were deliberately indifferent to his serious medical needs when they took away his shoe detail, arch supports, heat related illness mandate order, and extra mattress order. However, Plaintiff fails to allege facts showing that he suffered from any serious medical need that required a shoe detail, arch supports,

---

[5] Moreover, the Court notes that given the fact that Plaintiff received ongoing medical care for his hernia and that his condition was monitored by health care, his allegations regarding the delay in surgery do not appear to rise to the level of an Eighth Amendment violation. The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

a heat related illness mandate order, or an extra mattress. Because Plaintiff fails to allege facts showing the existence of a substantial risk of serious harm or that medical Defendants acted with deliberate indifference to that risk, he fails to state an Eighth Amendment claim against Defendants Grahn, Howard, or Deeren.

### 2.    Retaliation

Plaintiff claims that medical Defendants' conduct towards him was motivated by a desire to retaliate against him for filing grievances and making verbal complaints. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no

14

concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)). Plaintiff merely alleges the ultimate fact of retaliation in this action. Plaintiff has not presented any facts to support his conclusion that Defendants Grahn, Howard, and Deeren retaliated against him because he filed a grievance against some other, unnamed officer. Accordingly, Plaintiff's speculative allegations fail to state a claim.

### C.    Defendants Russell, Parsons, and Waters

Plaintiff fails to mention Defendants Russell, Parsons, and Waters in the body of his complaint. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries"). Because

Plaintiff's claims fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"), his complaint must be dismissed against Defendants Russell, Parsons, and Waters.

Moreover, to the extent that Plaintiff asserts wrongdoing by unnamed "kitchen work supervisors" (ECF No. 13, PageID.114), the Court notes that a conclusory assertion against a group of individuals is insufficient to state a claim. "Summary reference to a single, five-headed 'Defendants' does not support a reasonable inference that each Defendant is liable for retaliation." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citing *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right.") (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)).

### D.    Defendants Wakefield, Smith, Maybee, Clark, Lay, Zeller, Merryle, Nixon, Houck, and Bonn

Plaintiff vaguely alleges misconduct by Maybee, Clark, Lay, Zeller, Merryle, Nixon, Houck, and Bonn in relation to his treatment in his job assignment, some of which is clearly barred by the statute of limitations.

As noted above, absent tolling for the period during which a plaintiff's available state administrative remedies were being exhausted, any claims asserted by Plaintiff that arose prior to March 20, 2022, are barred by the three-year statute of limitations. According to the attachments to Plaintiff's amended complaint, his claims against Defendant Nixon arose on April 15, 2021, more than one year before March 20, 2022. (ECF No 13-1, PageID.138.) Moreover, Plaintiff's step II grievance appeal was denied on May 11, 2021. Under MDOC policy, prisoners have 10 days to file a step III appeal, and the step III respondent has another 60 days to respond. MDOC

16

Policy Directive 03.02.130 ¶¶ NN–OO (eff. Oct. 21, 2024). Therefore, it is clear that Plaintiff's claim against Defendant Nixon is barred by the statute of limitations.

Furthermore, to the extent that Plaintiff alleges mistreatment by Defendants Wakefield, Maybee, Merryle, Clark, Houck, and Bonn leading up to the termination of his food service job for the first time on May 28, 2019 (ECF No. 1, PageID.97; ECF No 13-1, PageID.142), such claims are barred by the statute of limitations.

Plaintiff fails to set forth specific dates regarding his allegations against Defendants following the reinstatement of his food service job. However, Plaintiff attaches a step I grievance response to his complaint which is dated November 8, 2019, and addresses a claim by Plaintiff that on October 23, 2019, Defendant Lay targeted him to sweep and mop after the job had already been completed by other prisoners. (ECF No. 13-1, PageID.141.) Plaintiff stated that it was the second time that Defendant Lay had targeted him because of his medical condition. (*Id.*) In the investigation summary, grievance respondent Defendant Wakefield stated:

> I interviewed Food Service Supervisor Lay and Inmate Branch #173159 about the events on 10/23/19. Food Service Supervisor Lay states that he asked Inmate Branch #173159 to sweep and mop his work area before leaving. Michigan Reformatory has no medical documentation concerning Inmate Branch #173159 on file. I asked Inmate Branch #173159 does he have any medical documentation or work restrictions, Inmate Branch #173159 stated that he does not have any documentation.

(*Id.*) Based on the interviews and the lack of medical documentation concerning Plaintiff, Defendant Wakefield denied the grievance. (*Id.*) Given the dates listed on the grievance response, it is clear that any claims regarding this particular incident are barred by the statute of limitations.

With regard to Plaintiff's claim that Defendants Wakefield, Zellar, Maybee, Merryle, Lay, and Clark assigned him to work in the dining room rather than giving him a diet cook assignment, which would have accommodated his hernia, the Court notes that this occurred at the time he was reassigned to work in the kitchen following his first job termination. As noted above, a review of

the attachments to Plaintiff's complaint shows that this occurred in September of 2019. (ECF No.13-1, PageID.142.) Therefore, this claim is barred by the statute of limitations.

Because they are not barred by the statute of limitations, the Court will address the merits of Plaintiff claims that on March 31, 2022, following surgery, Defendants Smith and Wakefield conspired to terminate Plaintiff from his job assignment based on his 10-pound weight restriction. (*Id.*, PageID.105.)

### 1.    Due Process

To the extent that Plaintiff is claiming that the termination of his job following his surgery violated his Fourteenth Amendment right to due process, such a claim lacks merit. The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006) (citing *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

With respect to Plaintiff's claim that he was improperly removed from his job assignment without due process, the Court notes that "no prisoner has a constitutional right to a particular job or to any job." *See Ivey*, 832 F.3d at 955; *see also Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (discussing that prisoners have no constitutional right to rehabilitation, education, or jobs); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (holding that there is no constitutional right to prison employment). Therefore, Plaintiff's allegations do not state a Fourteenth Amendment due process claim.

2.    **Retaliation**

Plaintiff also asserts that the March 31, 2022, decision by Defendants Wakefield and Smith to remove Plaintiff from his job assignment was motivated, at least in part, by a desire to retaliate against him for filing grievances. (ECF No. 13, PageID.105.) As noted above, "retaliation" is easy to allege and it can seldom be demonstrated by direct evidence. *Harbin-Bey*, 420 F.3d at 580; *Murphy*, 833 F.2d at 108. "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez*, 826 F.2d at 1538–39).

In some circumstances, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

Plaintiff merely alleges the ultimate fact of retaliation. Plaintiff alleges no facts from which to reasonably infer that the actions of Defendants Wakefield and Smith were motivated by any of his protected conduct. In his complaint, Plaintiff states that he filed grievances on food service supervisors, including Defendant Wakefield, on a number of occasions in the two-year period preceding his March 31, 2022, firing, primarily prior to his hernia repair surgery on March 24, 2022. The Sixth Circuit, however, has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Hill*, 630 F.3d at 476. This is especially true where, as here, the plaintiff is a prolific filer of grievances. *Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (holding that temporal proximity to the filing of a grievance is insufficient because any adverse action

"would likely be in 'close temporal proximity' to one of [the plaintiff's] many grievances or grievance interviews"). Plaintiff merely alleges temporal proximity between the conduct of Defendants Wakefield and Smith and his many grievances. Such allegations are insufficient to state a retaliation claim.

### 3.    Equal Protection

Plaintiff claims that he was treated "worse than other prisoners because of his classification as a homosexual." (ECF No. 13, PageID.106.) The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const. amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

"The Equal Protection Clause prohibits discrimination by government [actors] which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681-82 (6th Cir. 2011) (citing *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005)). "Although sexual orientation has not been recognized in this circuit as a suspect or quasi-suspect classification, homosexuals do constitute an 'identifiable group' for equal protection purposes." *Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012) (citation omitted).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right,

targets a suspect class, or has no rational basis.' ") (citation omitted); *Project Reflect, Inc. v. Metropolitan Nashville Bd. of Public Educ.*, 947 F. Supp. 2d 868, 881 (M.D. Tenn. 2013) ("Plaintiffs ... fail to plead the existence of a similarly situated comparator ... [therefore,] the Complaint does not contain sufficient factual matter to state a plausible claim.").

Plaintiff in this case fails to allege facts showing that he was treated differently from a similarly situated comparator when he was fired from his job in food service on March 31, 2022. Therefore, Plaintiff has not presented sufficient facts to state a plausible equal protection claim in relation to this conduct.[6] *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Accordingly, Plaintiff's equal protection claims are properly dismissed for failure to state a claim.

### 4.    Conspiracy

Plaintiff makes a conclusory assertion that Defendants Wakefield and Smith conspired with one another to terminate Plaintiff's job assignment. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of

---

[6] Although Plaintiff asserts that he was treated worse than a similarly situated white prisoner who also had a hernia while working in the kitchen prior to his surgery, this claim is barred by the statute of limitations as noted above. Plaintiff makes no such allegations in relation to the March 31, 2022, job termination.

conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez*, 826 F.2d at 1538.

Plaintiff in this case fails to allege any facts establishing a link between the alleged conspirators or any agreement between them. Plaintiff merely asserts that Defendants Wakefield and Smith conspired to terminate him from his job assignment. His claim is entirely conclusory. Plaintiff fails to even allege any specific actions on the part of either Defendant Wakefield or Defendant Smith. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Therefore, Plaintiff fails to state a conspiracy claim against Defendants Wakefield and Smith.

<u>**Conclusion**</u>

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*,

22

by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

      A judgment consistent with this Opinion will be entered.


Dated: <u>October 23, 2025</u>            <u>/s/ Hala Y. Jarbou</u>
                                        HALA Y. JARBOU
                                        CHIEF UNITED STATES DISTRICT JUDGE